UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JACKSON NJAI NDUNGU,

        Petitioner,

v.

JOSEPH E. FREDEN[1],

        Respondent.
_____

**DECISION AND ORDER**

6:23-CV-06375 EAW

## INTRODUCTION

Petitioner Jackson Njai Ndungu ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his ongoing detention under 8 U.S.C. § 1226(c) violates his right to procedural due process and "requests this Court to order Respondent to immediately release him from his custody or provide him a custody hearing before a neutral arbiter at which the Department must demonstrate it maintains a regulatory interest in detaining him." (*Id*. at ¶ 2). For the reasons below, the Court denies the petition.

_____

[1]     Joseph E. Freden has been automatically substituted as respondent in his official capacity as Deputy Field Office Director pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to amend the case caption accordingly.

- 1 -

## BACKGROUND

Petitioner is a citizen and national of Kenya. (Dkt. 1 at ¶ 3). He was admitted into the United States as a lawful permanent resident in 2008. (*Id*.). Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") on June 3, 2019. (Dkt. 7-1 at ¶ 25). That same date, the United States Department of Homeland Security ("DHS") issued a notice to appear alleging that Petitioner is subject to removal under § 237(a)(2)(ii) of the Immigration and Nationality Act ("INA"), U.S.C. § 1101 *et. seq*., for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (*Id*. at ¶ 26). DHS also issued a notice of custody determination requiring Petitioner's detention pending adjudication of removal proceedings. (*Id*. at ¶ 27).

Petitioner filed applications for relief from removal in July 2019. (*Id*. at ¶ 29). On October 2, 2019, an immigration judge ("IJ") found Petitioner removable as charged, denied all applications for relief, and ordered Petitioner removed to Kenya. (*Id*. at ¶ 30). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (*Id*. at ¶ 31). The BIA dismissed Petitioner's appeal on June 30, 2020. (*Id*. at ¶ 32). On July 30, 2020, Petitioner filed a Petition for Review ("PFR") and motion for stay of removal with the United States Court of Appeals for the Third Circuit.[2] (*Id*. at ¶ 33). The Third Circuit granted Petitioner's motion for a stay of removal on July 23, 2021. (*Id*. at ¶ 39). Petitioner's PFR remains pending before the Third Circuit.

---

[2]   At the time he filed the PFR, Petitioner was detained in Pennsylvania. *See* Petition, *Ndungu v. Attorney General*, No. 20-2562, Dkt. 1 (3rd Cir. Jul. 30, 2020).

Pursuant to the Third Circuit's decision in *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 225 (3d Cir. 2018) (holding that certain detained noncitizens are entitled to a bond hearing after six months of detention), *abrogated by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), Petitioner received a bond hearing before an IJ on March 3, 2021. (Dkt. 7-1 at ¶ 36). At that bond hearing, the government bore the burden to show by clear and convincing evidence that Petitioner posed a danger to the community or a risk of flight. (*Id.*). On March 11, 2021, the IJ determined that Petitioner would be kept in custody based upon a finding of both danger and risk of flight. (*Id.* at ¶ 37).

On January 10, 2022, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts. (Dkt. 1-3).[3] In the Massachusetts action, Petitioner and the government entered into a stipulation pursuant to which Petitioner was granted "a constitutionally adequate individualized bond hearing in the Boston Immigration Court at which ICE bears the burden of establishing, by clear and convincing evidence, that he poses a danger to the community." (Dkt. 1-4 at 4). The parties further stipulated that ICE would bear the burden of demonstrating risk of flight by a preponderance of the evidence and that the IJ would be required to "consider Petitioner's ability to pay in setting the amount of bond and alternative conditions of release that reasonably assure the safety of the community and Petitioner's future appearances." (*Id.*).

---

[3] At the time he filed that petition, Petitioner was detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. (*See* Dkt. 1-3 at 1).

Pursuant to the stipulation entered in the Massachusetts action, Petitioner received a bond hearing on August 5, 2022. (Dkt. 1-5 at 2). The IJ determined that the government had proven by clear and convincing evidence that Petitioner was a danger to the community and by a preponderance of the evidence that Petitioner posed a risk of flight. (*Id*. at 3-5). The IJ further determined that "no monetary bond or alternatives to detention mitigate the danger or flight risk he presents." (*Id*. at 5).

Petitioner filed the instant petition on July 3, 2023. (Dkt. 1).[4] The government opposes the petition. (Dkt. 7). Petitioner has filed a reply (Dkt. 8), and the parties have filed letter supplements regarding the Second Circuit's recent decision in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (Dkt. 9; Dkt. 11).

## DISCUSSION

### I. Jurisdiction and Burden of Proof

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See*

---

[4]  Petitioner was transferred to the BFDF on March 20, 2023. (Dkt. 7-1 at ¶ 47).

*Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

## II. Legal Framework

"Section 1226 of title 8 authorizes the government to detain a noncitizen pending a decision on whether the alien is to be removed from the United States." *Black*, 103 F.4th at 140 (quotation omitted). Petitioner is detained pursuant to § 1226(c), under which "noncitizens who have committed one of certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention." *Id*. at 140-41.

In *Demore*, the Supreme Court "held that detention under section 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" *Black*, 103 F.4th at 141 (emphasis and alteration in original and quoting *Demore*, 538 U.S. at 531). But numerous courts—including this Court and the Court of Appeals for the Second Circuit— have found that "a noncitizen's right to due process precludes his unreasonably prolonged

detention under section 1226(c) without a bond hearing." *Id*. at 143; *see also, e.g., Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2022 WL 2467655, at *2 (W.D.N.Y. July 6, 2022) ("unreasonably prolonged immigration detention without appropriate procedural protections may constitute a due process violation").

Prior to *Black*, this Court (and many district courts within the Second Circuit) applied "the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) . . . for addressing procedural due process claims for aliens—like Petitioner—who are detained pursuant to § 1226(c)." *Vazquez*, 2022 WL 2467655, at *2. But in *Black*, the Second Circuit held as a matter of first impression that due process challenges to prolonged detention under § 1226(c) should be reviewed using "the three-factor balancing test established in *Mathews [v. Eldridge*, 424 U.S. 319 (1976)]." *Black*, 103 F.4th at 147. The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Applying the *Mathews* factors, the Second Circuit concluded that the petitioners in *Black*, who had been detained pursuant to § 1226(c) without a bond hearing for seven months and 21 months, respectively, were entitled to "individualized bond hearings by an IJ." *Black*, 103 F.4th at 155. The Second Circuit further held that the burden was properly on the government to justify detention by clear and convincing evidence and that the IJ was

- 6 -

required to consider the ability to pay and alternatives to detention when setting any bond amount. *Id*. at 155-58.

### III. Due Process Does Not Entitle Petitioner to a Third Bond Hearing

Following the Second Circuit's instruction in *Black*, the Court applies the *Mathews* factors to determine whether Petitioner is entitled to a third bond hearing.[5] The first *Mathews* factor weighs in Petitioner's favor. As in *Black*, Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Further, Petitioner's private interest has been "seriously affected by [his] prolonged detention." *Id*. Petitioner has submitted information to the Court indicating that he has individualized mental health concerns that make detention particularly difficult for him. (*See* Dkt. 5).

The second *Mathews* factor, on the other hand, favors the government under the circumstances of this specific case. Petitioner has had two bond hearings at which the government was required to demonstrate dangerousness by clear and convincing evidence. At the second bond hearing, the IJ also was expressly required to consider (and did consider) "Petitioner's ability to pay in setting the amount of bond and alternative

---

[5] The Court rejects Petitioner's suggestion that it should order his immediate release. (*See* Dkt. 1 at ¶ 2). Petitioner has cited no authority supporting the conclusion that this would be appropriate, particularly given that he has twice been found, by clear and convincing evidence, to pose a danger to the community and has twice been found, once by clear and convincing evidence and once by a preponderance of the evidence, to pose a risk of flight. Given Petitioner's total lack of development of this argument, the Court need not consider it further.

conditions of release that reasonably assure the safety of the community and Petitioner's future appearances." (Dkt. 1-4 at 4). Under these circumstances, the risk of an erroneous deprivation is extremely low.

Nor do Petitioner's individual circumstances suggest a high likelihood that he has been subject to an erroneous deprivation of liberty. *See Black*, 103 F.4th at 153 (considering the petitioners' individual circumstances, such as having "led a peaceful life" for almost 20 years, in concluding that there was a high likelihood of an erroneous deprivation of liberty). The record before this Court indicates that Petitioner has a lengthy criminal history, which includes two criminal convictions for fleeing or attempting to elude an officer. (Dkt. 7-1 at ¶¶ 9, 24). The second of these convictions occurred in April 2019, only two months before Petitioner was taken into immigration custody. (Dkt. 7-1 at ¶¶ 9, 24). In addition to his criminal history, in March 2021, Petitioner was investigated for having "sent inappropriate and potentially threating letters to an Immigration Judge." (*Id*. at ¶ 38). In February 2023, he was disciplined for threatening another detainee, violating an order, and engaging in disruptive conduct. (*Id*. at ¶ 46). In April 2023, he was disciplined for having violated the BFDF's prohibitions on fighting and disruptive conduct. (*Id*. at ¶ 48).

The probable value of a third bond hearing under these circumstances is low. As just noted, the record indicates that Petitioner has continued to engage in dangerous conduct (*i.e.* making threats and fighting) since his last bond hearing. Apart from the passage of additional time, there does not appear to be any new or different information

that an IJ would consider at a third bond hearing. Petitioner has not produced or pointed to any such information.

Petitioner makes much of the fact that at his second bond hearing, the government did not bear the burden of proving risk of flight by clear and convincing evidence. (*See* Dkt. 9 at 2 n.2 ("[T]he August 5, 2022, hearing he received was inadequate because it required the government to only bear a preponderance of the evidence burden of establishing Mr. Ndungu poses a flight risk  Such a requirement differs from the Second Circuit's guidance in *Black*[.]"). Petitioner's argument fails to acknowledge that he entered into a stipulation in the Massachusetts action wherein he *agreed* that the procedural protections he received at the August 2022 bond hearing were "constitutionally adequate." (Dkt. 1-4 at 4). Petitioner offers no rationale for why, having received the benefit of his agreement with the government in the Massachusetts action, he should now be free to repudiate it.

In any event, in *Black*, the Second Circuit held that it "require[d] only that the government justify continued detention by clear and convincing evidence." 103 F.4th at 157. The Second Circuit never held that, to justify continued detention, the government was required to demonstrate by clear and convincing evidence both risk of flight *and* dangerousness. At the August 2022 bond hearing, the government demonstrated by clear and convincing evidence that Petitioner was a danger to the community. That was sufficient to comport with due process.

The third *Mathews* factor also favors the government. The government has legitimate and important interests in "(1) ensuring the noncitizen's appearance at

- 9 -

proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." *Black*, 103 F.4th at 153. While those interests are not undercut by requiring an initial individualized bond hearing, *see id.*, the same cannot be said of requiring seriatim bond hearings for noncitizens who have twice been found to be a danger to the community and a risk of flight, and where there has been no meaningful change in circumstances since the prior bond hearings. Similarly, while the government does not have an interest in the prolonged detention of noncitizens who are not dangerous and who do not pose a risk of flight, *see id.*, Petitioner has twice been determined not to fall into that category. Under the specific circumstances of this case, the government's interest weighs in favor of not requiring a third bond hearing.

Balancing the factors as required by *Mathews*, the Court finds that due process does not require that Petitioner receive a third bond hearing. While the Court does not discount the importance of the private interest at stake, Petitioner has received robust procedural protections, and has twice been found by clear and convincing evidence to present a danger to the community. He has presented nothing to support the conclusion that the balance of the evidence has meaningfully changed since those determinations were made. *Cf. Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *6 (S.D.N.Y. Aug. 7, 2018) ("Generally speaking, it is not unreasonable to conclude that, in the case of a second detention hearing, the Government's burden should be lower or that the burden should be imposed in the first instance on the detainee to demonstrate changed circumstances."). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In this particular

situation, and at this time, due process does not require any additional procedural protections be afforded to Petitioner.

## **CONCLUSIONS**

For these reasons, the Court denies the petition. (Dkt. 1). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      December 16, 2024
            Rochester, New York